### In re The MARRIAGE OF Kathryn Risk STETLER, Appellant–Respondent,

### and

### David K. Stetler, Appellee–Petitioner.

### No. 54A01–9411–CV–381.

Court of Appeals of Indiana.

Aug. 15, 1995.

Publication Ordered Nov. 3, 1995.

---

Frank C. Capozza, Indianapolis, for Appellant.

Daniel A. Teder, Loretta H. Rush, Angela M. Service, Reiling, Teder, Withered & Rush, Lafayette, for Appellee.

## OPINION

ROBERTSON, Judge.

Kathryn Risk Stetler [Wife] appeals the property distribution portion of the decree which dissolved her marriage to David K. Stetler [Husband]. Wife raises two issues, each with several subparts. We address Wife's concerns in five issues, none of which constitute reversible error.

## FACTS

The facts in the light most favorable to the trial court's judgment reveal that Husband and Wife began living together in 1989 and were married on December 7, 1992. The dissolution petition was filed thirty-four days later on January 11, 1993. Husband and Wife continued to live together throughout Wife's pregnancy with their child, Alexis, who was born later in 1993. No issues related to the custody or support of the child were litigated or appealed.

Husband, age forty-nine, has a substantial work history and through his premarital efforts had acquired a majority interest in an automobile dealership and other assets having a net value totalling approximately $1,000,000.00. Husband receives a substantial income from the dealership in the amount of approximately $220,000.00 per year.

At the time of the divorce, Wife, age thirty-four, had accumulated cash and other assets with a net value in excess of $40,000.00. She had bachelor and associate degrees from Purdue University, an Indiana real estate license, and had completed a substantial amount of her graduate education. Wife had substantial experience serving in executive positions in various Chamber of Commerce organizations as well as in selling real estate. She had earned as much as $25,000.00 to $30,000.00 per year in the past.

Throughout the parties' relationship, Husband provided for nearly all of Wife's needs. At no time did the parties co-mingle their assets. Wife was able to further her education as well as accumulate a substantial portion of her earnings during the parties' relationship. The trial court specifically found that Wife had been a beneficiary of Husband's established means and lifestyle, rather than a contributor to his estate.

The trial court awarded Husband approximately 90% of the net marital estate justifying the unequal division primarily on the basis of the short duration of the marriage and that substantially all of the marital assets were acquired through Husband's sole efforts. Wife's distribution included a cash award of $35,000.00 from Husband to be paid over time. The trial court required Husband to be responsible for a large portion of Wife's substantial attorney's fees and litigation ex-

penses including fees and expenses relating to this appeal.

Additional facts are supplied as necessary.

## DECISION

■ A motion for specific findings pursuant to Ind.Trial Rule 52 was filed. The purpose of making special findings is to provide the parties and reviewing courts with the theory upon which the judge decided the case so that the right of review might be preserved effectively. *Willett v. Clark* (1989), Ind.App., 542 N.E.2d 1354, 1357. Special findings, and the judgment which rests upon those findings, will be set aside only if they are clearly erroneous in that the record is devoid of facts or inferences to support the findings or that the judgment is unsupported by the findings. *Matter of C.D.* (1993), Ind.App., 614 N.E.2d 591, 593, *trans. denied.* In reviewing the trial court's entry of special findings, we neither reweigh the evidence nor reassess the credibility of witnesses. *Flansburg v. Flansburg* (1991), Ind. App., 581 N.E.2d 430, 435, *trans. denied.*

■ When reviewing a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision is clearly erroneous or constitutes an abuse of discretion. *In re Marriage of Davidson* (1989), Ind.App., 540 N.E.2d 641, 645. That is, reversal is merited only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* We may not reweigh the evidence or assess the credibility of witnesses, we consider only the evidence most favorable to the trial court's disposition of marital property. *Id.* Indiana Code 31–1–11.5–11(c), governing property distributions in contested divorces, reads as follows:

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties.

When effecting an unequal division of marital property, divorce courts are required to state the reasons based on the evidence which establish that an equal division is not just and reasonable. *Davidson,* 540 N.E.2d at 646.

■ We presume the divorce court correctly followed the law and made all the proper considerations in crafting its property distribution. *McGinley–Ellis v. Ellis* (1993), Ind.App., 622 N.E.2d 213, 217, *modified in part on other grounds,* 638 N.E.2d 1249. The presumption in favor of the correct action by the trial court is one of the strongest presumptions applicable to our consideration on appeal. *Baker v. Baker* (1986), Ind.App., 488 N.E.2d 361, 364.

### I.

■ Wife argues the 90–10 distribution reveals that the trial court violated Indiana public policy and injected fault into these proceedings. She argues Husband divorced her because she had refused to obtain an abortion and the lop-sided distribution indicates that the trial court punished her for her refusal to comply with Husband's wishes. Wife cites Ind.Code 16–34–1–1 for the proposition that Indiana public policy promotes childbirth over abortion.

The injection of this issue into this case is based upon Wife's mischaracterization of the

evidence. While Husband conceded that, in anger, he had requested Wife to obtain an abortion and had threatened to divorce her if she would not comply, he testified further that, once he had calmed down, he had come to accept Wife's decision to have the child. Husband testified that the reasons for his decision to obtain a divorce were unrelated to Wife's decision to bear the child. Husband continued to live with and support Wife during the pregnancy, was involved in Alexis' birth and care, and has taken interest in and has developed a relationship with Alexis. Husband's agreement to generous terms regarding child support obviated the need for the litigation of this issue.

We perceive Wife's argument as an invitation to inject fault into these proceedings and punish Husband for his initial, angry reaction to the news of Wife's pregnancy which had been against his wishes and had not been known to him before the marriage. As will be discussed under Issue II, the just and equitable nature of the trial court's property distribution is well supported by the findings and evidence.

■ Simply stated, we do not tolerate the injection of fault into divorce proceedings. *R.E.G. v. L.M.G.* (1991), Ind.App., 571 N.E.2d 298, 301. We presume the trial court correctly followed the law and made all proper considerations in crafting its property distribution. Therefore, we find no error.

## II.

■ Wife asserts the 90–10 distribution was not just and reasonable arguing that the trial court overemphasized Husband's superior contributions to the acquisition of the marital assets and failed to give proper consideration to Wife's inferior economic circumstances and earning capacity at the time of the divorce. Wife asserts that her net worth at the time of the divorce was only $212.00.

The trial court entered detailed findings analyzing all the factors of I.C. 31–1–11.5–11(c). The trial court found that the parties' economic circumstances and earning capacities had not materially changed during the parties' relationship and marriage which was of short duration and found that these fac-

tors did not weigh heavily against Husband's superior contributions through which virtually all of the marital assets were acquired and which enabled Wife to further her education and accumulate her earnings. Wife left the marriage with assets valued at approximately $80,000.00 and no liabilities. Most of Wife's assets are cash or are highly liquid. Frankly, we do not understand or appreciate Wife's assertion that her net worth at the time of the divorce was only $212.00. Again, we presume the trial court correctly followed the law and made all proper considerations in rendering its decision. The trial court's property distribution is well-supported by its findings which are well-supported by the evidence. Therefore, we find no error.

## III.

■ Wife asserts the trial court grossly undervalued the business assets awarded to Husband arguing that the trial court "virtually accepted all the values set forth by Husband's experts and totally ignor[ed] the values established by Kathy's experts." (Wife's brief, p. 36) Both Husband's and Wife's experts utilized similar methodologies in computing a value for Husband's business. Husband's expert placed the value of the business at approximately $1,200,000.00 while Wife's expert placed the value somewhat higher, but within the "ballpark," at nearly $1,700,000.00. The trial court accepted Husband's valuations.

On appeal, Wife propounds an entirely new methodology for valuing the business assets which she calls "a simple income approach," which she employs in arriving at a range of values for the business well over $1,000,-000.00 higher than the value opined by her expert at trial. (Wife's brief, p. 37) Wife also mischaracterizes the evidence with respect to Husband's expert's valuation of the business assets in asserting that the trial court placed the value of the business lower than that of Husband's expert.

■ The burden is on the parties to produce evidence of the value of the marital property at the dissolution hearing and a party is bound by the evidence he or she presented at trial. *In re Marriage of Larkin* (1984), Ind.App., 462 N.E.2d 1338, 1344. The

divorce court has broad discretion in ascertaining the value of marital property, and the court's valuation will not be disturbed absent an abuse of discretion. *Nill v. Nill* (1992), Ind.App., 584 N.E.2d 602, 603, *trans. denied.* The trial court does not abuse its discretion if there is sufficient evidence and reasonable inferences therefrom to support its valuation. *Id.* We will not reweigh the evidence but will consider the evidence in the light most favorable to the judgment. *Id.* at 604. There is a strong presumption that the trial court correctly valued marital property. *Id.*

Husband's expert testified that his methodology was more accurate for valuing Husband's business. The trial court's valuation of Husband's business assets is well-supported by evidence and we find no error.

## IV.

Wife asserts the trial court erred by including a $313,000.00 debt Husband owed to his business in the marital estate. Wife characterizes this debt as a "phantom loan" that should not be included in the marital estate because it represents money Husband owes himself.

Both Husband's and Wife's experts testified that the $313,000.00 loan was considered as an asset in the valuation of Husband's business. Thus, it would follow that, because the loan is not a "phantom asset" to the business, it is not a "phantom loan" to Husband. Again, we presume the trial court correctly followed the law and made all proper considerations in determining the value of the marital estate. The trial court did not err in including the loan in the marital estate and we find no error.

## V.

Husband had desired that the parties enter into a prenuptial agreement. However, Wife refused to sign the agreement proffered by Husband. Wife argues the trial court erred by enforcing the terms of the prenuptial agreement which had not been consummated.

The trial court entered the following finding which constitutes the only finding concerning the unsigned prenuptial agreement:

Furthermore, the fact that a prenuptial agreement was prepared does not constitute relevant evidence of an agreement that [Husband] would split his property with [Wife] on a 50–50, or any other, basis.

As discussed earlier, the trial court expressly based its division of marital assets on a detailed analysis of the factors prescribed by I.C. 31–1–11.5–11(c). Again, we presume the trial court correctly followed the law and made all the proper considerations. Wife's argument that the trial court enforced the unsigned prenuptial agreement is without merit and we find no error.

Judgment affirmed.

BAKER and NAJAM, JJ., concur.

### ORDER

SHARPNACK, Chief Judge.

This Court having heretofore handed down its opinion in this cause on August 15, 1995 marked "Memorandum Decision, Not for Publication"; and

The appellant, by counsel, having thereafter filed her Motion to Publish Opinion and this Court having voted to grant said Motion, thereafter issued its order ordering the appellee to show cause why said opinion should not be published; and

The appellee having failed to file a response to said show cause order, the Court now finds that the appellant's Motion to Publish Opinion should be granted and that this Court's opinion in this appeal should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. The appellant's Motion to Publish Opinion is granted and this Court's opinion heretofore handed down in this cause on August 15, 1995 marked "Memorandum Decision, Not for Publication" is now ordered published.