Ernest W. CHASE, Appellant–
Respondent,

v.

Mary M. CHASE, Appellee–Petitioner.

No. 15A04–9701–CV–12.

Court of Appeals of Indiana.

Jan. 26, 1998.

George A. Leininger, Leininger Law Office, Madison, for Appellant.

Richard A. Butler, Lawrenceburg, for Appellee.

## OPINION

RATLIFF, Senior Judge.

### Case Summary

Appellant–Respondent, Ernest Chase ("Ernest"), appeals from the trial court's Supplemental Decree of Dissolution ("Decree"). We affirm in part and remand with instructions.

### Issues

Ernest raises one issue on appeal which we divide into two and restate as:

I. Whether, in accordance with Ind.Code § 31–15–7–5[1], the trial court properly assigned more than fifty percent of the marital assets to Ernest's wife, Mary Chase ("Mary"), without stating its reasons for doing so.

II. Whether the trial court permissibly exercised its discretion in declining to set off the one-half interest in the marital real home, valued at $21,650.00, which Ernest inherited prior to his marriage to Mary.

Pursuant to Appellate Rule 8.3(B), Mary raises one issue on cross-appeal which we restate as:

III. Whether the trial court properly awarded Ernest a $10,000.00 credit for assisting Mary in the care of her minor children from a prior marriage.

### Facts and Procedural History

The facts most favorable to the trial court's disposition of marital property show that Ernest and Mary were married on September 25, 1979, and separated in October of 1994. There were no children of this marriage. However, Mary had three minor children from a prior marriage to Ernest's brother. For the duration of Ernest's and Mary's marriage, Ernest raised and loved Mary's children, his nieces and nephews, as his own.

Both Ernest and Mary brought property into the marriage. Ernest inherited a one-half interest in the real estate located on Aberdeen Road in Dillsboro, IN, shortly before his marriage to Mary. Ernest's sister owned the other one-half interest. Mary owned a house from a previous marriage and borrowed $25,000.00 against her house so she and Ernest could purchase the entire Aberdeen property at a public auction approximately one year following their marriage. The Aberdeen property then became the couple's marital home. Both parties contributed physical labor and money to the Aberdeen property, which included a house and farm, throughout the marriage. Sometime during the marriage, Mary used her house as collateral to borrow approximately $18,000.00 which she loaned to Jerry Martin. After

Martin defaulted on this loan, Mary was forced to sell her house to pay the debt. Mary spent $13,000.00 of the proceeds obtained from the sale of her house for improvements to the Aberdeen property. As a result of Martin's default, Mary currently has a personal judgment against him with a face value of thirty-six thousand dollars $36,-000.00.

During the marriage, Mary maintained the household, paid all the bills, and performed much of the physical labor on the farm. Mary also obtained several minimum wage jobs throughout the marriage. Ernest was employed by Monsanto during the marriage and earns approximately $56,000.00 a year. He also performed physical labor on the family farm.

On October 4, 1996, the trial judge entered its Decree. Additional facts are stated in our discussion of the issues.

### Discussion and Decision

#### I. Unequal Division of Marital Property

Ernest argues that the trial court erred when it assigned more than fifty percent of the marital assets to Mary. Specifically, Ernest asserts the trial court should have divided the marital assets equally, or, in the alternative, stated its reasons for the unequal division of marital assets in accordance with Ind.Code § 31–15–7–5. We agree.

■ When reviewing a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision is clearly erroneous or constitutes an abuse of discretion. *In re Marriage of Stetler,* 657 N.E.2d 395, 398 (Ind.Ct.App.1995), *trans. denied.* Reversal is merited only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* We may not reweigh the evidence or assess the credibility of witnesses, and we consider only the evidence most favorable to the trial court's disposition of the marital property. *Id.*

---

**1.** *Formerly* Ind.Code § 31–1–11.5–11(c).

Our legislature has enacted a statutory presumption that an equal division of marital property is just and reasonable. *Crowe v. Crowe*, 555 N.E.2d 180, 182 (Ind.Ct. App.1990). A trial court may deviate from this statutory presumption if a party presents relevant evidence to rebut the presumption. Ind.Code § 31–15–7–5. Relevant evidence includes evidence of (1) each spouse's contribution to the acquisition of property, (2) acquisition of property through gift or inheritance prior to the marriage, (3) the economic circumstances of each spouse at the time of disposition, (4) each spouse's dissipation or disposition of property during the marriage, and (5) each spouse's earning ability. Ind.Code § 31–15–7–5. "If the trial court determines that a party opposing an equal divison [sic] has met his or her burden under the statute, the court must, in its findings and judgment, based on the evidence, state its reasons for deviating from the presumption of an equal division." *In re Marriage of Davidson*, 540 N.E.2d 641, 646 (Ind.Ct.App.1989).

While the evidence in the present case could support an unequal division of property in favor of either party, the trial court's Decree was completely devoid of any reason or explanation for its deviation from the presumption of an equal division.[2] We may not speculate as to the trial court's reasoning. Likewise, we are prohibited from reweighing the evidence in this case. Therefore, we must remand this issue to the trial court with instructions to either follow the statutory presumption or to set forth its rationale for deviating from the presumption that an equal division is just and reasonable.

## II. Real Estate

Ernest next asserts that the trial court erred by not setting off the one-half interest in the marital estate which he inherited prior to his marriage to Mary. We disagree.

As previously discussed, the trial court "must divide the property of the parties in a just and reasonable manner, and that includes property owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to final separation of the parties, or acquired by their joint efforts." *In re Marriage of Coyle*, 671 N.E.2d 938, 941 (Ind.Ct.App.1996). Indiana Code Section 31–15–7–5 "does not exclude inheritance from the marital pot or place those assets beyond the court's authority to divide." *In re Marriage of Pulley*, 652 N.E.2d 528, 531 (Ind.Ct.App.1995), *trans. denied*. The statute states only that the presumption of even distribution may be rebutted by evidence of inheritance. *Id.* The division of marital property is left to the sound discretion of the trial court and we will reverse only where that decision is clearly against the logic and effect of the facts and circumstances before the court. *Simpson v. Simpson*, 650 N.E.2d 333, 335 (Ind.Ct.App. 1995). In reviewing the trial court's determination, we focus on "what the court did, not what it could have done." *Fiste v. Fiste*, 627 N.E.2d 1368, 1372 (Ind.Ct.App.1994). Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Bloodgood v. Bloodgood*, 679 N.E.2d 953, 957 (Ind.Ct.App.1997).

The trial court was not constrained to find Ernest was entitled to a credit for his inherited one-half interest in the Aberdeen property. Moreover, while no findings on this issue were laid out by the trial court, the record reveals that its decision to not grant Ernest a credit for his inheritance was supported by the evidence. Thus, we cannot say that the trial court's determination was clearly against the logic and effect of the facts and circumstances before the court. For the forgoing reasons, we decline Ernest's invitation to reweigh the evidence.

---

**2.** Additionally, the trial court found that Mary had a judgment with a face value of $36,000.00 and that she was entitled to receive all payments made on said judgment free from any claim from Ernest. However, because the trial court did not set forth its reasons for deviating from the presumption of an equal division of property, it is unclear whether the trial court intended for Mary to be credited with the full face value of that judgment or what value, if any, the court accorded to that judgment.

### III. Child Support Credit

Mary asserts that the trial court improperly awarded Ernest a $10,000.00 credit for his contribution towards the care of her minor children during their marriage. We agree.

The present case is factually similar to *In re Marriage of Coyle*, 671 N.E.2d 938 (Ind. Ct.App.1996), where there was a childless second marriage and minor children from the first marriage. In *Coyle*, the trial court found that the wife dissipated marital assets by spending marital funds to pay for college and transportation for one of her daughter's college expenses and by forgiving interest on a land contract sale of her home to another daughter. In remanding the case to the trial court, another panel of this Court stated:

> High rates of divorce and remarriage mean that many children live in a family with a stepparent before they become independent. The term "family" has been described by our court as a collective body of persons who form one household, under one head, and is subject to one domestic government, and who have reciprocal, natural, and moral duties to support and care for each other. In second marriages, it is a fact of life that the parties often provide direct and indirect financial support to each other's children.... [M]oney spent for a child's education, transportation and housing does not usually constitute a waste or misuse of marital assets. These are the kinds of expenditures that parents typically make for their children.

*Coyle*, 671 N.E.2d at 944 (internal quotations and citations omitted).

■ The above-cited analysis is applicable in the present case. The record indicates that the money spent during the parties' marriage for the care of Mary's children included the normal type of expenditures which parents typically make for their children. There was also evidence that the children's natural father paid child support for each minor child, albeit a minimal amount. Additionally, Ernest testified that he loved and treated the children, his nieces and nephew, as his own. Moreover, Mary paid for her daughter's college expenses directly out of the real estate commissions she earned. For the foregoing reasons, we find that the trial court abused its discretion in awarding Ernest a $10,000.00 child support credit for the voluntary support of his stepchildren.

### Conclusion

In sum, we affirm the trial court's decision to not set-off Ernest's inherited one-half interest in the Aberdeen property. However, we remand two issues to the trial court with instructions to conduct further proceedings in accordance with this opinion. Accordingly, the trial court is directed (1) to either follow the statutory presumption that an equal division of marital property is just and reasonable as set forth in Ind.Code § 31–15–7–5 or to set forth its rationale for deviating from the presumption; and (2) to eliminate the $10,000.00 child support credit granted Ernest.

Judgment affirmed in part, and remanded with instructions.

RUCKER, J., concurs.

DARDEN, J., concurs as to issues I and II, and dissents as to issue III with separate opinion.

DARDEN, Judge, concurring in part and dissenting in part.

I concur with the majority as to Issues I and II; however, I respectfully dissent with regard to Issue III. The majority analogizes the facts of this case to those in *In re Marriage of Coyle*, 671 N.E.2d 938 (Ind.Ct.App. 1996), wherein this court reversed the trial court's finding that the wife dissipated marital assets by spending marital funds to pay for one of her daughter's college expenses, and by forgiving interest on a land contract sale of her home to another daughter. We stated that money spent for a child's education, transportation and housing does not usually constitute waste or misuse of marital assets because they are the kinds of expenditures that parents typically make for their children. I, however, find the facts of *Coyle* to be distinguishable from those before us. Ernest· did not allege that Mary dissipated the marital assets by spending marital funds to pay for her children's expenses. Rather,

he sought a credit for his contribution towards the care of Mary's minor children during their marriage.

The division of marital property is left to the sound discretion of the trial court. *Simpson v. Simpson*, 650 N.E.2d 333, 335 (Ind.Ct.App.1995). Mary has cited no authority for the proposition that the trial court lacks discretion to award such a credit, and I know of none. Although I might have exercised my discretion in a different fashion, I think that Mary has failed to show that the trial court abused its discretion in awarding Ernest, who spent more than $80,000 on Mary's three minor children during their 18 year marriage, the $10,000 credit. I would therefore affirm the grant of the credit.